FILED

2021 Aug-31  AM 08:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MONICA AUDRA FORD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00485-SGC |
| | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Monica Audra Ford, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1).[2]  Ford timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review.[3]  For the reasons stated below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 10).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic filing system and appear in the following format: (Doc. __ at __).  Citations to the transcript use page numbers assigned by the Commissioner to the record and appear as follows: (Tr. at __).

[3] The plaintiff's motion for extension of time to file her reply brief (Doc. 16) is **GRANTED** *nunc pro tunc*. Ford's brief is deemed timely filed and was considered by the court in reaching its decision here.

## I.  PROCEDURAL HISTORY

Ford has a high school education and has been previously employed as a billing researcher, billing coordinator, and billing office coordinator.  (Tr. at 61-62). Ford filed an application for DIB on November 20, 2017, alleging she became disabled on November 14, 2016 due to physical impairments including lumbar radiculopathy-left, back pain-chronic, sciatica, and herniated disc L5-S1 discectomy.  (*Id.* at 51-52, 121-122, 231).  After her claims were denied, Ford requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 70). Following a hearing, the ALJ denied Ford's claims on May 13, 2019.  (*Id.* at 7-24). Ford was fifty years old when the ALJ issued the decision.  (*Id.* at 51, 64).  Ford sought review by the Appeals Council, but her request was declined on February 11, 2020.  (*Id.* at 1).   After the Appeals Council denied review of the ALJ's decision, that decision became the final decision of the Commissioner.  *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Ford commenced this action.  (Doc. 1).

## II. STATUTORY AND REGULATORY FRAMEWORK

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  Furthermore, a claimant must show she was disabled between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Ford met the SSA's insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since November 14, 2016, the alleged onset date of her disability.  (Tr. at 12).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).   If the claimant does not have a severe impairment or

3

combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Ford has the following severe impairments: lumbar degenerative disc disease and radiculopathy. (*Id.*).

If the claimant has a severe impairment, or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Ford does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. 13).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant can perform her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at §

404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the Commissioner must finally determine whether the claimant is able to perform other work that exists in substantial numbers in the national economy in light of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant can perform other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant cannot perform other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

Before proceeding to the fourth step, the ALJ determined Ford has the following RFC:

> [T]o perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she could lift and carry ten pounds occasionally and five pounds frequently, could stand or walk in combination up to two hours in an eight-hour day, could sit six hours in an eight-hour day. As part of her job requirements, she would not climb ladders, robes or scaffolds; would not perform around hazards; or in concentrated exposure to extreme cold temperatures or vibration.

(Tr. 13). At the fourth step, the ALJ noted Ford has had a change in age category to that of a person closely approaching advanced age but, nonetheless, determined she can perform her past relevant work as an accounting clerk and bookkeeper. (*Id.* at 18). Therefore, the ALJ concluded Ford is not disabled. (*Id.*).

## III. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is

supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.   DISCUSSION

On appeal, Ford contends the ALJ's decision should be reversed and remanded because: (1) the ALJ failed to properly assess the severity of Ford's symptoms by evaluating the entire record, and (2) the ALJ did not properly evaluate Ford's RFC according to SSR 96-8p. (Doc. 14).

### A. Severity of Symptoms

Ford argues the ALJ did not properly assess the severity of her symptoms by: (1) failing to properly evaluate her subjective complaints, and (2) failing to properly explain why no specific evidentiary weight was given to any prior administrative medical findings or medical opinions, including those of State agency physician, Dr. Whitney. (Doc. 14 at 8-14). As discussed below, the court finds the ALJ's determination is supported by substantial evidence.

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. § 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the intensity, persistence, and effect of the claimant's symptoms or her ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d), 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including her history, medical signs and laboratory findings, and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom

8

analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

Here, the ALJ found Ford's medically determinable impairments could reasonably be expected to cause some symptoms and functional limitations; however, her statements concerning the intensity, persistence, and limiting effects of her symptoms to be not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 14). At the hearing, Ford testified the only treatment she currently received was medication and that none of her medical providers had specifically restricted her functioning. (*Id.* at 41). Related to her ability to work, Ford testified she had difficulty focusing because of her pain medication and would be an unreliable worker due to having to lie down five to six hours a day. (*Id.* at 42). However, Ford admitted she was not instructed by medial professionals to lie down for five to six hours a day. (*Id.*). Further, Ford testified she had been advised by her surgeon, Dr. Cordover, to walk two to three miles per day but that she walked for shorter distances and less frequently than advised. (*Id.* at 42-43). She also testified she had not been prescribed an assistive device like a cane, crutches, or a walker. (*Id.* at 42).

Ford, who lives with her husband, reported she is unable to sleep regularly without insomnia or interruptions from pain.  (*Id.* at 268).  She indicated she must stand against the wall or the bed for support when dressing herself and holds the side of the shower wall for balance when bathing.  (*Id.* at 268).  Ford reported she is able to make the bed, perform light dusting, and fold clothes.  (*Id.* at 269).  She prepares food for herself twice per week and does laundry with assistance from her husband.  (*Id.*).  She is unable to clean the shower and tub.  (*Id.*).  Her husband does all outdoor yard work.

Ford further reported she is able to go to church—which is located 15 minutes away—twice weekly, run errands a couple times a week, and shop for groceries and other items.  (*Id.* at 270).  She can drive or ride in a car to perform those errands.  (*Id.*).  Ford enjoys crafting and candle making on special occasions and spends time watching movies, going out to eat, and other family activities once per month.  (*Id.* at 271).  She is also able to pay her bills, count change, handle a savings account, and use a checkbook.  (*Id.* at 270).

The ALJ found some of the extreme limitations reported by Ford are not supported by the medical evidence.  (*Id.* at 14).  Related to her subjective complaints, the ALJ stated:

> The claimant reported that she is unable to work due to back and leg pain, and an inability to focus due to medication side effects. She stated that her medication makes her drowsiness [*sic*], causes cloudiness in thinking and would affect her reliability.  Furthermore, she stated that

she has to lay down five to six hours a day due to pain and the need to get off her legs.  She agreed that none of her treating providers have instructed her to lie down five to six hours a day.  The claimant reported a history of spinal fusion. She also agreed that she underwent a lot of physical therapy since her surgery, and put fort her best effort to complete her physical therapy.

Notably, function reports completed by the claimant in conjunction with her disability application, show that she maintains a fairly active social life, can perform some household chores, pays bills, prepares meals a couple of times a week, can concentrate up to two hours, drives herself shop [*sic*] in stores twice a week for about an hour, but uses the shopping cart for support, and makes no mention of the need to lie down five to six hours in a day.  Additionally while the claimant alleged that her medication causes a lack of focus or an inability to concentrate, the medical records show few, if any, of these complaints, and in fact shows that she specifically denied these symptoms on several occasions.

After careful consideration of the evidence, the Administrative Law Judge finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms and functional limitations.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The medical evidence of record confirms a history of lumbar degenerative disc disease and radiculopathy. While the medical evidence substantiates that the claimant experiences some difficulties from symptoms related to these impairments, overall, the medical evidence does not show that these symptoms cause severe functional limitations or are as debilitating as alleged, and do not support a more restrictive finding than provided by the residual functional capacity above.

(*Id.* at 14-15). (internal citations omitted).

Here, substantial evidence supports these findings by the ALJ. Further, the

ALJ examined inconsistencies between Ford's statements and the medical evidence

11

and articulated the reasons for his findings. (*Id.* at 13-17). As noted by the ALJ, Ford's treatment records show a history of two lumbar surgeries since the alleged onset date in November of 2016. (*Id.* at 15, 683-684, 917). Records from Dr. Charles Clark of Neurosurgical Associates show the claimant presented on December 5, 2016, with a chief complaint of back and left leg pain. (*Id.* at 679). Magnetic resonance imaging ("MRI") completed on Ford's lumbar spine showed a "large left L5-S1 disc herniation with encroachment on the S1 nerve root." (*Id.* at 681). Accordingly, Dr. Clark recommended an outpatient discectomy at L5-S1, which was performed on December 13, 2017. (*Id.* at 15, 681, 683). At her post-operative visit to Dr. Clark on January 3, 2017, Ford's left hip and leg pain had improved significantly, and she was doing reasonably well overall. (*Id.* at 688).

Ford saw Dr. Clark again on June 12, 2017. (*Id.* at 15, 691). As noted by the ALJ, Ford reported some relief of radicular symptoms but continued to complain of left hip and leg pain, as well as lower back pain. (*Id.*). Ford's physical exam showed no focal weakness, an absent left ankle jerk compared to the right, and a positive straight leg raise test. (*Id.* at 15, 692). An additional MRI performed on June 15, 2017, showed disc desiccation with moderate disc space narrowing and mild endplate changes, as well as diffuse disc bulge without recurrent central disc protrusion and moderate left mild right neural foraminal narrowing. (*Id.* at 15, 697).

Dr. Clark then recommended a lumbar interbody fusion at L5-S1 with percutaneous pedicle screws to address Ford's left radicular pain. (*Id.* at 15, 701).

On July 12, 2017, Ford sought a second opinion from Dr. Andrew Cordover. (*Id.* at 15, 703). At the time of Dr. Cordover's examination, she reported 45-50% pain relief after a couple of weeks related to her first surgery. (*Id.* at 703). As noted by the ALJ, Ford's examination by Dr. Cordover showed few objective findings. (*Id.* at 15, 703- 705). She had complaints of moderate tenderness to palpation, with some restriction in flexion due to pain, but strength was noted to be normal at five out of five in the bilateral hip flexors, knee flexors, and extensors. (*Id. at* 15, 703-704). There was intact sensation to light touch, and Ford's gait was normal. (*Id.*). Dr. Cordover's assessment was lumbar disc degenerative disease at L5-S1 with low back pain and radiculitis status post laminectomy/MMD. (*Id.*). Dr. Cordover discussed treatment options with Ford, including the possibility of a block and NSAID medication and further surgical options, including lumbar fusion. (*Id.* at 704).

Ford then returned to Dr. Cordover for a checkup and opted to undergo an L5-S1 anterior lumbar fusion, which was performed in April of 2018. (*Id.*at 15, 917, 919). On May 1, 2018, Ford saw Dr. Cordover for a post-operative check. (*Id.* at 15, 921). Ford reported her pain waxed and waned. (*Id.*). Dr. Cordover noted few objective findings, stated there was no "definitive explanation of [Ford's] bilateral

symptoms," and found "no subjective neurologic findings and negative tension sign, as well as palpable pulses. (*Id.* at 921).

As noted by the ALJ, additional follow-up notes from May 29, 2018, show Ford reported improvements in back pain and leg pain that waxed and waned. (*Id.* at 15, 923). She was walking half a mile of day and had started physical therapy one week prior. (*Id.*). Dr. Cordover noted he had previously encouraged her to significantly increase her walking and therapy and suggested she pursue more aggressive low-impact aerobic activity. (*Id.*). Further follow-up notes from July 17, 2018, show Ford was doing fair and reported some good days and bad. (*Id.* at 16, 924). She was walking a couple of miles a day but became tired when walking. (*Id.*). In July 2018, Dr. Cordover's assessment reflected residual symptoms in Ford's back and left leg with no weakness or neurologic deterioration. (*Id.*at 924). He did not anticipate any issues with Ford performing moderate activities. (*Id.*).

Physical therapy notes from August 14, 2018, show Ford reported pain that had worsened because of missed physical therapy appointments and lack of activity due to her husband having surgery. (*Id.*). Ford reported she was recently walking two miles per day, at one point increased to three miles per day, but had not walked the prior two weeks due to her husband's surgery. (*Id.*). A follow-up examination by Dr. Cordover on September 11, 2018, reflects that although Ford complained of posterior leg and heel pain, there were few objective findings on examination. (*Id.*

14

at 16, 926).  Dr. Cordover ordered an MRI of Ford's lumbar spine, which was performed the same day.  (*Id.* at 16, 1012).  The MRI showed non-significant changes at L4-5 and that the "distal spinal cord ha[d] a normal MR appearance." (*Id.* at 1012).  Dr. Cordover suggested nerve blocks for pain relief; however, it is unclear whether Ford ever received those blocks.  (*Id.* at 16, 1012).

Finally, Ford saw Dr. William Sides on October 29, 2018.  (*Id.* at 16, 1019). She reported back pain with left lumbar radiculopathy but that pain medication improved her symptoms.  (*Id*).  Her physical examination by Dr. Sides reflected mild tenderness in the lower back with no spasms; pain of forward flexion at the waist at 45 degrees; no point tenderness along the lower thoracic and lumbar spinous processes; intact reflexes in the knees and ankles; and non-antalgic gait.  (*Id.* at 16, 1021).

While Ford argues the record supports her reported symptoms, because the ALJ fully evaluated the medical evidence in light of Ford's subjective complaints of pain and clearly articulated inconsistences between Ford's reported symptoms and the objective medical evidence, the ALJ properly applied the pain standard.  *See* 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c).  Further, the ALJ's reasoning for his findings are clear to this court.  *See Foote*, 67 F.3d at 1562.

Related to her subjective complaints, Ford also argues the ALJ erred by not giving any specific evidentiary weight to the medical findings from her medical

sources, including State agency physician Dr. Whitney.  (Doc. 14 at 11).  This argument is without merit.  Ford filed her claim on November 18, 2017. (Tr. at 120).  On January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence, which became effective on March 27, 2017.  In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from medical sources." 20 C.F.R. § 404.1520c(a) (2017).

The ALJ fully considered the medical opinions and prior administrative medical findings in Ford's case, including those of Dr. Whitney, and specified he found the medical sources from the relevant period more persuasive than the non-medical sources, except to the extent non-medical sources were consistent with medical sources.  (Tr. at 17).  Further, as noted above, the ALJ's findings are supported by substantial evidence.  *See Bloodsworth,* 703 F.2d at 1239 (defining substantial evidence as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion").  Moreover, it is not the role of this court to reweigh the evidence. *See Dyer*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In sum, the ALJ articulated in detail his findings that Ford's subjective complaints were inconsistent with the medical evidence of record, and substantial

evidence supports the ALJ's determination that Ford's pain was not as severe as she claimed.  Accordingly, Ford's argument related to her subjective symptoms fails.

**B. RFC Finding Pursuant to SSR 96-8p**

Ford also contends that in making the RFC assessment, the ALJ failed to adequately evaluate Ford's physical therapy records and function reports and failed to provide a function by function analysis.  (Doc. 14 at 15-18).  This argument is without merit.

SSR 96-8p states the Commissioner's policies regarding the assessment of a claimant's RFC and calls for the ALJ to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 12, 1996).  Additionally, the ruling calls for the ALJ to describe how the evidence supports his conclusion and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Here, as noted by the ALJ, the record evidence as a whole supports an RFC to perform  sedentary work as defined by 20 C.F.R. § 404.1567(a), except Ford could lift and carry ten pounds occasionally and five pounds frequently, could stand or walk in combination up to two hours in an eight-hour day, and could sit six hours in an eight-hour day.  As discussed at length in the preceding section, the ALJ

concluded that although Ford alleged disabling functional limitations arising from her impairments, her treatment records, diagnostic imaging, and reports of her daily activities do not reflect such severe limitations.  (Tr. at 17).  In reaching this conclusion, the ALJ reviewed the entire record and considered all evidence, including Ford's physical therapy and function reports in his decision.  (*Id.* at 12-17).

Accordingly, the ALJ complied with SSR 96-8p by providing a narrative discussion that cited specific evidence and described how the evidence supported the conclusion.  *See Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009) (holding the ALJ complied with SSR 96-8p by discussing the relevant evidence and making a finding of the plaintiff's exertional limitations).

**V.  CONCLUSION**

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 31st day of August, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE